IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LORENA L. KRAGERUD,              )   Civil No.: 3:12-cv-00318-JE
                                 )
                    Plaintiff,   )   FINDINGS AND
                                 )   RECOMMENDATION
        v.                       )
                                 )
CAROLYN W. COLVIN,               )
Acting Commissioner of Social Security,  )
                                 )
                    Defendant.   )
_____ )

        Richard A. Sly
        209 SW Oak Street, Suite 102
        Portland, OR 97204

        Linda S. Ziskin
        Ziskin Law Office
        P.O. Box 753833
        Las Vegas, NV 89136

            Attorneys for Plaintiff

FINDINGS AND RECOMMENDATION - 1

S. Amanda Marshall, U.S. Attorney
Adrian L. Brown, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204-2902

Franco L. Becia
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, WA 98104

      Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff Lorena Kragerud brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final decision of the Commissioner of Social Security (the Commissioner)

denying her applications for Disability Income Benefits (DIB) and Supplemental Security

Income (SSI) benefits under the Social Security Act (the Act).  Plaintiff seeks an Order

remanding the action to the Social Security Administration (the Agency) for an award of

benefits.

For the reasons set out below, the Commissioner's decision should be affirmed.

## **Procedural Background**

Plaintiff filed applications for DIB and SSI on February 29, 2008, alleging that she had

been disabled since December 27, 2007.

After her claim had been denied initially and on reconsideration, Plaintiff timely

requested an administrative hearing.

On January 25, 2010, a hearing was held before Administrative Law Judge (ALJ) Steve

Lynch.   Plaintiff; Terry Smith, Plaintiff's significant other; and Gail Young, a Vocational Expert

(VE); testified at the hearing.

FINDINGS AND RECOMMENDATION - 2

In a decision filed on February 10, 2010, ALJ Lynch found that Plaintiff was not disabled within the meaning of the Act. That decision became the final decision of the Commissioner on December 12, 2011, when the Appeals Council denied Plaintiff's request for review. In the present action, Plaintiff challenges that decision.

## Background

Plaintiff was born on December 12, 1962, and was 45 years old at the time of her alleged onset of disability. She obtained a General Education Diploma (GED) in 1980, attended a community college for one year, and has past relevant work as an administrative assistant and property manager. She has not worked since she suffered a hypoxic brain injury on December 27, 2007, the date of her alleged onset of disability.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA). A claimant engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 404.1520(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have such an impairment is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. § 404.1520(c).

FINDINGS AND RECOMMENDATION - 3

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal an impairment listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the  claimant is able to perform relevant work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(e).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant. Tackett, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. Id.

### Medical Record

On December 27, 2007, Plaintiff was found unconscious in her home. She was taken to the hospital and admitted to intensive care. Doctors determined that she had overdosed on either morphine or Vicodin, and was suffering from acute renal failure, acidosis, and hypoxia. Imaging showed probable cerebral edema and cerebellar infarcts. Plaintiff regained consciousness after five days, and her renal failure and acidosis resolved. She told doctors that she was not familiar with morphine or Vicodin, did not know how she had received the medication, and had no memory of taking either morphine or Vicodin. Plaintiff said that she had not attempted suicide and denied suicidal ideation.

Dr. Jeffery Beckwith examined Plaintiff on February 8, 2008. During this early stage of her recovery, Dr. Beckwith noted that Plaintiff had a shuffling, wide-based gait, exhibited poor strength, and was slow in performing a finger-nose test. He diagnosed anoxic brain damage and referred Plaintiff to Dr. Martha MacRitchie.

Dr. MacRitchie examined Plaintiff on February 11, 2008. Plaintiff's father, who accompanied Plaintiff, reported that Plaintiff's gait had improved, but that Plaintiff continued to experience balance problems that made it difficult for her to dress. Plaintiff was able to follow Dr. MacRitchie's one and two-step commands, but had difficulty with tests of memory and other cognitive tests. Dr. MacRitchie diagnosed anoxic brain injury and ordered occupational and physical therapy.

FINDINGS AND RECOMMENDATION - 5

Plaintiff received occupational and physical therapy from mid-February through mid-March, 2008.  She initially exhibited numbness, poor coordination, weakness, and significant memory loss; fatigued quickly; and required assistance with many of her daily activities.  However, her prognosis was considered good and she improved with treatment.  In notes dated February 28, 2008, Chris Veloon, O.T.R., reported that Plaintiff was "doing significantly better with focus and concentration with simple tasks."  Veloon added that Plaintiff was able to perform self-care tasks without cues, but needed cues with "newly presented but familiar tasks" repeated until she had performed them several times.

On February 29, 2008, Plaintiff told Dr. MacRitchie that her cognition was improving, and Dr. MacRitchie noted that she had made substantial progress during the previous three weeks.  Plaintiff wondered when she could begin driving and was anxious to return to work.

In a psychological discharge summary dated March 10, 2008, Steve Pethick, Ph.D., opined that Plaintiff had no significant symptoms of depression or anxiety and did not require psychological treatment.  Three days later, Plaintiff told Raema Smith, a physical therapist, that she felt "like a fog" had lifted inside her head, and reported that she was thinking much more clearly.  On March 14, 2008, Kristina Fedette, S.L.P., noted that Plaintiff's attention span had significantly improved.  Fedette indicated that Plaintiff's concentration and judgment were good, that her short-term memory was mildly impaired, and that her long-term memory was within normal limits.  A few days later, Fedette indicated that Plaintiff expressed complex ideas, feelings, and needs "clearly without visible impairment."  Plaintiff was discharged from physical and occupational treatment on March 18, 2008.

FINDINGS AND RECOMMENDATION - 6

On March 21, 2008, Dr. MacRitchie indicated that Plaintiff had continued to improve but was not able to return to her previous work and would be referred to state vocational rehabilitation services.

Dr. Beckwith examined Plaintiff on April 10, 2008.  Plaintiff told Dr. Beckwith that she had been tired and unhappy when she overdosed, but was currently "much improved."  Dr. Beckwith opined that Plaintiff was "really doing well."

The Oregon State Office of Vocational Rehabilitation Services evaluated Plaintiff to determine her eligibility for services.  Based upon a review of her records, Jeanne Barter, M.S., C.R.C., ranked Plaintiff's disability priority in the  "most significantly disabled" category. Barter indicated that Plaintiff's limits in mobility, self-care, work skills, and work tolerance supported that designation, and opined that Plaintiff's prognosis for returning to work, in which she had reportedly supervised 9 to 13 workers, was "guarded."

Plaintiff underwent a series of evaluations between April and November 2008.   Based upon objective testing conducted on April 11, 2008, Dr. Mary Bean reported that Plaintiff's

> Relative strengths include attention/concentration and memory, although visual memory is weaker than verbal memory.  Mild deficits are noted in motor skills, verbal skills, and some aspects of visual-spatial skills.  More notable deficits are evident in some aspects of problem solving executive functioning and some aspects of visual-spatial skills.  Two measures of verbal intellectual ability clustered at the low end of average suggest at least low average premorbid intellectual functioning. Observed word finding problems may have slightly depressed verbal performance.

Dr. Bean noted that Plaintiff's injury had occurred only four months earlier, and opined that Plaintiff would likely show "substantial spontaneous improvement for at least several more months."  She opined that Plaintiff's prognosis for resuming work at her former level of employment was "guarded," but thought there was a "fair chance" that Plaintiff was "capable of competitive functioning at lower levels of employment."

FINDINGS AND RECOMMENDATION - 7

Non-examining Agency consultants reviewed Plaintiff's records and evaluated her residual functional capacity in forms dated June 18, 2008. Richard Alley, M.D., concluded that Plaintiff could perform light work, but was limited to frequent bilateral fingering and handling. Robert Henry, Ph.D., reviewed Dr. Bean's evaluation at length. He concluded that Plaintiff was "limited to simple routine work with no general public interaction secondary to occasional word finding difficulties." He further opined that Plaintiff could perform "more complex tasks with more job/supervisory support."

Dr. Danielle Erb examined Plaintiff on August 20, 2008. She noted that Plaintiff reported that she had resumed driving and was swimming two or three times a week for exercise. Plaintiff reported that she was not taking any medications. On examination, Dr. Erb found that Plaintiff had full strength with some decreased sensation in her left hand. She also had problems with balance. Dr. Erb did not perform a full cognitive assessment, but noted that Plaintiff had some cognitive difficulties. She noted that Plaintiff appeared to be making "some good progress" and did not appear to be significantly depressed, but thought that Plaintiff was not ready to return to employment without receiving further therapy.

Mark Stuckey, Psy.D., examined Plaintiff and administered a series of cognitive tests six days later. He reported that Plaintiff's performance on the Mini Mental Status Exam (MMSE) "fell in the normal functioning range," and that Plaintiff's full-scale intelligence quotient score was in the low-average range. Plaintiff's scores on the Trails Test, "an assessment screen for indices of brain damage," were within the excellent range. Plaintiff's performance on the Reitan-Indiana Aphasia Screening Test, a gross screen for neuropsyschological deficits, was "free of any errors." Results on the Wechsler Memory Scale-III ranged from low average to high average.

FINDINGS AND RECOMMENDATION - 8

Dr. Stuckey concluded that Plaintiff presented "with a persistent decline and function from her estimated pre-accident level, particularly given her self-report and her employment duties at the time." He opined that Plaintiff "retained the diagnosis of the Cognitive Disorder, NOS" and opined that Plaintiff's low IQ score "warranted a rule out Borderline Intellectual Function" diagnosis. Dr. Stuckey opined that the prognosis for Plaintiff's return to her former level of employment remained guarded, and provided suggestions concerning ways to maximize Plaintiff's ability to succeed in less demanding positions.

Darren Packard, S.L.P., a speech and language pathologist, examined Plaintiff on September 5, 2008. Packard reported that Plaintiff made no errors on a Trail Making Test of attention and concentration "considered highly sensitive to the effects of brain injury." Plaintiff scored in the average range on a Symbol Digits Modalities Test, and results on the Paced Auditory Serial Addition Test indicated reduced attention to detail. Plaintiff's cognitive endurance was "functional but diminished," and memory testing "demonstrated subtle signs of mild memory disturbance." Plaintiff occasionally struggled with word finding and occasionally needed to have instructions repeated, but demonstrated no other language deficits. Packard concluded that Plaintiff "demonstrated mild difficulties with memory, attention/concentration, executive functioning, reduced cognitive endurance, and verbal expression." He opined that the results were "consistent with hypoxic brain injury."

Alana Raber, Ph.D., a clinical psychologist, examined Plaintiff at Dr. Erb's request on October 7, 2008. Based upon an interview and a review of Plaintiff's medical records, Dr. Raber opined that Plaintiff was suffering from adjustment disorder and experienced "[m]ild difficulties with memory, attention/concentration, executive functioning, reduced cognitive endurance, and

verbal expression." She recommended outpatient cognitive behavioral psychotherapy, and suggested a schedule for this treatment.

In notes dated October 22, 2008, Dr. Raber indicated that Plaintiff's progress had exceeded expectations. In notes dated October 28, 2008, Dr. Raber stated that Plaintiff had achieved her goals of "independently employ[ing] compensatory strategies to improve attention and concentration, per report and observation," and had completed "moderately complex, sustained, selective, alternative and divided attention exercises with 90% success." Plaintiff subsequently applied for and obtained a volunteer position with a police department, and apparently did well working at a front desk.

The most recent evaluation found in the administrative record was completed by Les Goldman, Ph.D., a neuropsychologist, on June 27, 2010, while Plaintiff's request for review by the Appeals Council was pending.[1] Dr. Goldman reviewed Plaintiff's medical records, beginning with Plaintiff's hospitalization in December, 2007, and administered 12 neuropsychological tests. Results on tests that measured attention and concentration ranged from within or above normal limits to excellent. Plaintiff had difficulty with tests that measured abstract reasoning, and performed at or above the average range on other tests. Results of memory testing ranged from the low end of normal limits to the above average range. Dr. Goldman reported that Plaintiff's verbal and visuospatial skills appeared to be within or above normal limits, and that Plaintiff's attention and concentration appeared "to be essentially within normal limits." He reported that Plaintiff's executive function appeared to be "mildly to

---

[1]The Appeals Council made this supplemental evidence part of the administrative record and considered it in evaluating Plaintiff's request for review.

moderately impaired, especially with regard to planning."  Dr. Goldman added that Plaintiff's

thinking was "very concrete," and that Plaintiff could not "think creatively or strategically."

Based upon his observation and testing, Dr. Goldman opined that Plaintiff could

"perform all work related tasks with the exception of high stress, highly demanding tasks that

require abstract thinking and attention to a myriad of detail."  He found that Plaintiff was "mildly

impaired with respect to being able to perform complex and varied tasks," and was "moderately

impaired in her ability to carry out responsibility for directions, control and planning."  He

opined that Plaintiff had made a "remarkable recovery from a very significant brain injury," had

been "diligent in all aspects of her rehabilitation," and demonstrated an "extremely impressive"

attitude, sense of humor, and resilience.  Dr. Goldman opined that Plaintiff's prognosis was very

good, and that, except for impairments in abstract reasoning and planning that would preclude

performance of "creative or very complex tasks," her ability to work was unimpaired.

### Plaintiff's Testimony

Plaintiff cites the following excerpts of her hearing testimony in support of her

contention that the ALJ erred in finding that she was not disabled.[2]

Plaintiff tires easily, both physically and mentally.  She is easily confused.  This causes

her difficulty, for example, when driving: She often has trouble finding her way, even to places

with which she is familiar.  Sometimes she has to call a family member for help, even if she is

only a short distance from home.  Plaintiff is flustered in busy environments, and this causes her

to cry, shake, and leave.  It is very difficult for Plaintiff to "deal with a lot of things" around her.

She becomes frightened, and does not know how she will react to stressors.  Plaintiff lacks

stamina, and needs to have even simple instructions repeated.

---

[2]As noted below, Plaintiff has not disputed the ALJ's finding that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not wholly credible.

**ALJ's Decision**

The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2012.

At the first step of his disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability on December 27, 2007.

At the second step, the ALJ found that Plaintiff's cognitive disorder, NOS; paresthesia in the left hand secondary to a traumatic brain injury; and depression were severe impairments within the meaning of 20 C.F.R. §§ 404.1520 (c) and 416.920 (c).

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the listings, 20 C.F.R. Part 404, Subpart P., App.1.

The ALJ next assessed Plaintiff's residual functional capacity (RFC).  He found that Plaintiff retained the capacity to perform light exertional level work subject to the following limitations: She was limited to frequent fingering with her left, non-dominant hand; could not work in an environment with a factory floor noise level; could not work at unprotected heights; could perform only simple, repetitive tasks; and could have no interaction with the general public.  The ALJ found that Plaintiff's  statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with this assessment.

Based upon the testimony of the VE, at the fourth step, the ALJ found that Plaintiff could not perform her past relevant work as an administrative assistant and property manager.

At the fifth step of his analysis, the ALJ found that Plaintiff could perform jobs that existed in substantial numbers in the national economy.  The ALJ cited production line assembly

and housekeeping/cleaning jobs as examples of the work that Plaintiff could perform.  Based

upon the conclusion that Plaintiff could perform such work, the ALJ found that Plaintiff was not

disabled within the meaning of the Act.

## Standard of Review

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by

reason of any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

 423(d)(1)(A).  Claimants bear the initial burden of establishing disability.  Roberts v. Shalala,

66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  The Commissioner bears

the burden of developing the record,  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991),

and bears the burden of establishing that a claimant can perform "other work" at Step Five of the

disability analysis process.  Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal

standards and the findings are supported by substantial evidence in the record as a whole.

42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Andrews, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it supports or

detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir.

1986).  The Commissioner's decision must be upheld, however, even if "the evidence is

susceptible to more than one rational interpretation."  Andrews, 53 F.3d at 1039-40.

## Discussion

FINDINGS AND RECOMMENDATION - 13

Plaintiff contends that the ALJ erred in concluding that she could sustain competitive employment.  She asserts that, in concluding that she could perform production line assembly and housekeeping/cleaning jobs at step five of his analysis, the ALJ improperly rejected the opinion of Dr. Danielle Erb, a treating doctor.  Plaintiff also contends that the ALJ committed several significant errors at step two.  I will address the latter of these contentions first in the discussion below.

A. **ALJ's Evaluation of Impairments at Step 2**

As noted above, at the second step of his disability analysis, the ALJ found that Plaintiff's cognitive disorder, NOS; paresthesia in the left hand secondary to a traumatic brain injury; and depression were severe impairments within the meaning of 20 C.F.R. §§ 404.1520 (c) and 416.920 (c).  In making this finding, the ALJ observed that "[o]ther symptoms and complaints appear in the medical treatment records periodically, but there is nothing to show that they are of such severity as to cause more than minimal vocational limitations."

Plaintiff contends that the ALJ erred in failing to identify "the impairments he was referring to," failing to explain why he found those were non severe, failing to find that her severe impairments included a bipolar disorder, and in failing to incorporate "the mode of analysis required by the Psychiatric Review Technique form into the decision . . . ."  Plaintiff's Opening Memorandum at 12-13.

A medically determinable impairment must be established by diagnosis from a medically acceptable source, and must be supported by medical evidence.  20 C.F.R. §§ 404.1508, 404.1513(a), 404.1528, 416.908, 416.928.  An impairment or combination of impairments is considered "severe" at step two if it significantly limits a claimant's ability to perform basic work activities.  SSR 96-3p.  An impairment is not severe if it is a slight abnormality that has no

more than a minimal effect on the ability to do such activities.  Id.  The "severe impairment"

analysis is a "de minimis screening device to dispose of groundless claims."  Smolen v. Chater,

80 F.3d 1273, 1290 (9th Cir. 1996).

The ALJ did not err in omitting a bipolar disorder from the list of Plaintiff's severe

impairments, because the record did not include a diagnosis of this impairment that was

supported by the requisite signs, symptoms, or objective findings.  Though Drs. Michael

Horowitz and David Selby listed a bipolar disorder among Plaintiff's diagnoses, their treatment

records do not refer to the  mania or hypomania which are typically associated with a bipolar

disorder diagnosis, and I find no reference to an underlying diagnosis of bipolar disorder

supported by signs, symptoms, or objective findings.  It appears that Plaintiff's bipolar disorder

diagnoses referenced in the administrative record were based upon Plaintiff's reports of a history

of this impairment, and not upon objective signs, symptoms, or laboratory findings.  In addition,

other doctors did not agree with the diagnosis.  Dr. Stuckey, for example, concluded that a

bipolar diagnosis was "not warranted," given the absence of a history of mania and hypomania in

Plaintiff's treatment records, and Dr. MacRitchie found the diagnosis "questionable."

Moreover, there is not evidence in the record that Plaintiff ever received any treatment for a

bipolar disorder.

Under these circumstances, the ALJ did not err in omitting bipolar disorder from the list

of Plaintiff's severe impairments.  Even if the diagnosis had been supported by objective medical

findings, omission of this disorder from the list of Plaintiff's severe impairments would not have

constituted error because no doctor opined that the disorder limited Plaintiff's ability to perform

basic work activities, and there is no other evidence that Plaintiff had a bipolar disorder that

resulted in such limitations.

FINDINGS AND RECOMMENDATION - 15

Plaintiff's contention that the ALJ erred in failing to identify and discuss other "unspecified impairments" that he found were non-severe also fails. The ALJ did not refer to other "impairments," but instead simply noted that the medical record included references to "other symptoms and complaints" which did not cause more than "minimal vocational limitations." Plaintiff bears the burden of establishing that an impairment is "severe" and lasts for 12 months. See 20 C.F.R. §§404.1505, 404.1509, 416.905, 416.909. As the Commissioner correctly notes, Plaintiff here has not identified evidence supporting the conclusion that the ALJ failed to adequately consider any impairment that should have been characterized as "severe."

Plaintiff cites Keyser v. Commissioner, 648 F.3d 721 (9th Cir 2011) in support of her contention that the ALJ also erred at step 2 by failing to employ the mode analysis required by the Psychiatric Review Technique Form (PRTF). Plaintiff's reliance on Keyser is misplaced. In Keyser, the ALJ simply referenced and adopted a PRTF completed by the state agency consultant, and failed to himself apply the special technique anywhere in his written decision. The court concluded that the ALJ had erred in failing to "complete a PRTF and append it to the decision, or incorporate its mode of analysis into his findings and conclusions." Id. at 726.

Here, unlike in Keyser, the ALJ did apply the analysis set out in the PRTF, albeit at step 3 rather than at step 2, and examination of his analysis discloses no error. Plaintiff cannot establish that the application of the review technique at step 3 rather than at step 2 was prejudicial to her claims, and her contention that the ALJ failed to properly evaluate her claims at step 2 fails.

B. **Evaluation of Dr. Erb's Opinion**

As noted above, Dr. Erb, a treating physician, examined Plaintiff on August 20, 2008. She did not perform a full cognitive assessment, but noted that Plaintiff had some cognitive difficulties and opined that Plaintiff needed cognitive rehabilitation.  Dr. Erb opined that Plaintiff appeared to be making "some good progress" but thought that she was not ready to return to any type of employment without additional therapy.  The ALJ observed that Dr. Erb's opinion concerning Plaintiff's ability to work "appears to rest, at least in part, to [sic] the assessment of an impairment outside [Dr. Erb's] area of expertise."  He stated that, "Dr. Erb, a physical medicine doctor, believed the claimant has cognitive difficulties which make [sic] unable to engage in work activity."  The ALJ further stated that, because it was "generally inconsistent with other opinion of record," Dr. Erb's opinion was "afforded little weight."

Plaintiff contends that the ALJ erred in rejecting Dr. Erb's opinion and failed to provide adequate support for its rejection.

1. **Evaluating Medical Opinion**

Because treating physicians have a greater opportunity to know and observe their patients, their opinions are given greater weight than the opinions of other physicians. Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989).  An ALJ must provide clear and convincing reasons supported by substantial evidence in the record for rejecting a treating physician's uncontroverted opinions.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).  An ALJ must provide "specific, legitimate reasons . . . based upon substantial evidence in the record" for rejecting opinions of a treating physician which are contradicted.  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted).

2. **Analysis**

Dr. Erb opined that Plaintiff was not ready to return to work without additional therapy in August 2008, approximately 8 months after Plaintiff suffered her injury. In analyzing the ALJ's rejection of that opinion, I will assume that Dr. Erb's opinion would have been the same 4 months later (after Plaintiff had received additional therapy as she had recommended), satisfying the requirement that a claimant be unable to work for a 12 month period in order to qualify for disability benefits.

No other physician appearing in the medical record offered an opinion that was inconsistent with the ALJ's conclusion that Plaintiff could perform simple work tasks. Approximately 4 months after Plaintiff was injured, Dr. Bean concluded that, though the prospects for her return to her former work were "guarded," there was a good chance that plaintiff was "capable of competitive functioning at lower levels of employment." Within a few days of Dr. Erb's evaluation, Dr. Stuckey opined that the prospect of Plaintiff's return to her former work was "guarded," and offered suggestions for maximizing her success in performing more simple jobs. Based upon extensive testing, Dr. Goldman later concluded that, though she could not perform complex work or tasks requiring creativity, Plaintiff's ability to perform other work was "not impaired."

Because Dr. Erb's opinion was contradicted by the opinions of other treating and examining doctors, the ALJ needed to support its rejection with specific and legitimate reasons which were supported by substantial evidence in the record. Dismissal of Dr. Erb's opinion on the grounds that she was a "physical medicine doctor" addressing issues outside her area of expertise did not meet this requirement. As the Commissioner correctly acknowledges, the ALJ

could not reject the opinion of Dr. Erb, a brain specialist, on the grounds that she was not qualified to give an opinion concerning Plaintiff's cognitive function.

Despite this error, the ALJ did provide an adequate basis for rejecting Dr. Erb's opinion because his conclusion that it was inconsistent with other medical opinions in the record was specific, legitimate, and supported by substantial evidence in the record. As noted in the summary of the medical evidence above, Plaintiff was examined and treated by a number of doctors, and Plaintiff's cognitive function was repeatedly and extensively tested. Objective testing showed marked improvement in Plaintiff's cognitive function after her injury. With the exception of Dr. Erb, doctors consistently provided assessments supporting the conclusion that, while Plaintiff likely could not perform complex work, she could perform work activities that were consistent with the ALJ's RFC evaluation.

In his decision, the ALJ cited substantial medical evidence, including results of objective testing and opinions of treating and examining doctors, supporting the conclusion that Plaintiff retained the functional capacity required to perform the simple, repetitive work activities that were consistent with the ALJ's  RFC assessment. In rejecting Dr. Erb's conclusory assertion that Plaintiff could not return to any kind of work in August 2008, the ALJ did not explicitly reiterate his review of that evidence. However, in the context of his decision, there is no doubt that his specific references to the other medical opinion and evidence he cited elsewhere in his decision applied to, and supported, his rejection of Dr. Erb's opinion.

A careful review of the ALJ's decision and the administrative record fully supports the conclusion that the ALJ's basis for rejecting Dr. Erb's opinion was legally and factually sound. In addition, though the ALJ did not have the opportunity to consider it, Dr. Goldman's post-hearing evaluation, which was submitted to the Appeals Council while Plaintiff's request for

review was pending, also supports the conclusion that Plaintiff was not disabled within the meaning of the Act. As noted above, based upon extensive objective testing, Dr. Goldman concluded that, except for work requiring "creative or very complex tasks," Plaintiff's "ability to work is not impaired."

Where, as here, the Appeals Council considers new material submitted after an ALJ has issued a decision, that material becomes part of the administrative record which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence. Brewes v. Commissioner, 682 F.3d 1162-63 (9th Cir. 2012) (citing Ramirez v. Shalala, 8 F.3d 1444, 1451-52 (9th Cir. 1993); Lingenfelter v. Astrue, 504 F.3d 1028, 1030 n. 2 (9th Cir. 2007); Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000)). Accordingly, Dr. Goldman's post-hearing assessment is relevant in determining whether the underlying evaluation of medical opinion and the decision denying Plaintiff's applications for benefits are supported by substantial evidence.

C. **ALJ's Conclusion That Plaintiff Could Perform "Other Work"**

Plaintiff contends that the ALJ erred in concluding, at step 5 of the disability analysis, that she could work as a production line assembler or perform a "housekeeping/cleaning" job. She asserts that there is "no evidence" in the administrative record supporting a finding that she can "sustain full-time work." In support of these contentions, Plaintiff cites her own testimony, a Vocational Rehabilitation Services (VRS) record characterizing her as "Most Significantly Disabled," and excerpts of the observations and opinions of several doctors and mental health practitioners. She contends that the ALJ failed to include all of her limitations in his RFC assessment.

These contentions fail.  In his decision, the ALJ fully addressed Plaintiff's physical and mental limitations, and thoroughly addressed the opinions of treating and examining doctors.  He cited substantial objective evidence in the voluminous record supporting the conclusion that Plaintiff could perform work, including the positions he cited in the fifth step of his disability analysis.

Plaintiff's reliance on her own testimony is unavailing, given that the ALJ concluded that Plaintiff's statements concerning the severity of her symptoms and limitations were not wholly credible, and Plaintiff has not challenged that conclusion here.

The VRS document describing Plaintiff as "Most Significantly Disabled" is not probative medical evidence concerning Plaintiff's ability to perform work activities.  It simply reflected a determination that Plaintiff was eligible for rehabilitation services, and there is no basis for concluding that it was based upon the type of analysis required to determine whether a claimant is disabled within the meaning of the Act. The VRS determination was prepared by Ms. Barter, a counselor who did not purport to evaluate the nature or severity of Plaintiff's impairments, or to determine whether Plaintiff would be unable to perform any employment during a continuous 12 month period as required to establish disability under the Act.  Moreover, as the Commissioner correctly notes, Ms. Barter is not an "acceptable medical source" qualified to make judgments about the nature and severity of a claimant's impairments under relevant regulations.  See 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  In addition,  though Ms. Barter's conclusions as to the severity of Plaintiff's limitations appeared to be based largely upon Plaintiff's difficulty caring for herself, earlier records indicate that Plaintiff was independently performing her activities of daily living by the time the VRS document was prepared.

There is no question that an ALJ's vocational hypothetical presented to a VE must set out all of a claimant's impairments and limitations, and that a VE's conclusion that a claimant can work lacks evidentiary value if the assumptions set out in the hypothetical are not supported by the record.  E.g., Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  Here, the ALJ's vocational hypothetical satisfied these requirements.  The ALJ's conclusion at step 5 that Plaintiff could perform jobs that existed in substantial numbers in the national economy was supported by substantial evidence and not based upon legal error.  The Commissioner's decision should therefore be affirmed.

## Conclusion

A Judgment should be entered AFFIRMING the decision of the Commissioner and DISMISSING this action with prejudice.

## Scheduling Order

This Findings and Recommendation will be referred to a district judge.  Objections, if any, are due July 25, 2013.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 8th day of July, 2013.


        /s/ John Jelderks
John Jelderks
U.S. Magistrate Judge

FINDINGS AND RECOMMENDATION - 22